## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **FLORENCE GRIMSLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 4622 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **HONEYWELL INTERNATIONAL, INC.,** | ) | |
| **UNION LOCAL 134 AFLCIO, and** | ) | |
| **SYSTEM SENSOR,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a race discrimination case. In 2006, Florence Grimsley ("Grimsley") sued, among

others, Honeywell International, Inc. ("Honeywell"), Union Local 134 AFLCIO, and System

Sensor, alleging violation of her rights under Title VII of the 1964 Civil Rights Act, 42 U.S.C.

§ 2000e-3(a). Specifically, she alleged race and gender discrimination, and made further

allegations that she had been sexually harassed. Defendant Honeywell filed a Motion for

Summary Judgment on May 18, 2009. The parties have consented to have this Court conduct any

and all proceedings in this case, including the entry of final judgment. 28 U.S.C. § 636(c);

N.D. Ill. R. 73.1. For the reasons stated below, the Court grants Honeywell's Motion.

# I. Background

## A. The Underlying Incident

Grimsley is an Illinois resident who worked at System Sensor, a company located in St. Charles, Illinois, which Honeywell purchased in 2006.[1] (Pl.'s Answers to Local 134 Statement of Facts ("Pl.'s Answer to Local") ¶¶ 1-2.) Grimsley worked at System Sensor from August 1987 until February 2006, during which time she was a member of the International Brotherhood of Electrical Workers, Local 134 union ("Union"). (*Id.* at ¶¶ 8-9.) While employed at System Sensor, Grimsley maintained a "good relationship" with the Director of Human Resources, Dick Braun ("Braun"). (*Id.* at ¶ 8.)

System Sensor maintains an Hourly Employee Handbook ("the Handbook"), which states that the following offenses lead to "'immediate termination': '[a]ny act which endangers the safety or lives of others,' '[c]arrying firearms or other dangerous weapons on Company property,' '[t]hreatening physical violence,' and '[o]ther offenses of similar nature or severity.'" (Pl.'s Answer to Local ¶ 5 (all brackets in original).)

The facts directly related to this lawsuit began sometime in 2005. Since 2005, Grimsley worked twenty to thirty feet from Dave Myers ("Myers"), a co-worker at System Sensor, which had employed him since 1992. (Honeywell's Resp. to Pl.'s Statement of Facts ("Def.'s Resp.") ¶ 1.) Although Myers and Grimsley shared the same job responsibilities–performing maintenance on the facility (Myers Dep. 8:8-24, Mar. 23, 2009)–and worked near each other, Myers denies having frequent contact with Grimsley at work. (Myers Dep. 10:18-11:23.)

---

[1] For ease, the Court refers to System Sensor and Honeywell interchangeably.

On January 26, 2006, Braun became aware of an incident involving Grimsley and Myers, but, because he was busy, decided to deal with it the following day. (Honeywell's Mot. for Summ. J. ("Def.'s Mot.") Ex. 2 at 126). The next day, January 27, 2006, Myers heard from a co-worker, Becky Hasler–who, in turn, had heard from another co-worker (who had supposedly tried to stop Grimsley)–that Grimsley tried to "go after" Myers with a knife and possibly had a gun. (Pl.'s Answer to Local ¶ 10; Myers Dep. 16:1-17-10, 17:22-24.) Upon hearing this, Myers went with Joe Smyder ("Smyder"), the Union business representative, to Braun's office. (Pl.'s Answer to Local 10; Myers Dep. 17:19-19:22.) At this meeting, Braun thought Myers seemed extremely concerned for his own safety. (Braun Dep. 14:8-13, Mar. 23, 2009.) Myers told Braun that Grimsley had previously threatened to bring sexual harassment charges against him if he reported any incidents to Braun; at his deposition, Braun could not recall any occasions when Grimsley said she was going to file sexual harassment charges. (Def.'s Resp. ¶ 21.) Myers also mentioned to Braun that Grimsley had once claimed that Myers punched her in the stomach; but, on that occasion, Myers stated that he told Grimsley he had no idea what she was talking about. (Myers Dep. 36:19-37:11.)

Following this meeting, Braun called Grimsley into his office. Braun informed Grimsley of the accusations made, which she denied. (Braun Dep. 14:14-15:5.) There is some confusion about what happened next. During his deposition, Braun stated that Grimsley leveled counter accusations at Myers, claiming Myers had punched her in the stomach. (*Id.*) But later in his deposition, after refreshing his recollection with notes, Braun stated that *he* brought up the punching incident to Grimsley, who stated that she could not remember anything about it. (Braun Dep. 59:13-60:3.) At the conclusion of the meeting, Braun informed Grimsley she was being

suspended pending an investigation of the incident but did not further discuss the accusations against her. (Def.'s Resp. ¶ 13; Braun Dep. 13:16-15:15.)

Grimsley testified at her deposition that Myers had, on one occasion, threatened to kill her and punched her in the stomach. (Grimsley Dep. 18:3-8, Dec. 16, 2008.) She also stated that, although she discussed the threat and punching incident with co-workers, (Grimsley Dep. 20:3-32:21), she had not reported it to anyone in Honeywell management. (Grimsley Dep. 128:3-12.)

Grimsley made no other accusations, (*id.*), nor did she ever report any accusations of sexual harassment to anyone in Honeywell management. (Pl.'s Answer to Local ¶ 49.) Although she claims that she complained to co-workers that Myers sexually harassed her, she offers no evidence that any such complaint or accusation ever reached Honeywell management. (*E.g.*, Grimsley Dep. 30:18-36:19.)

After the suspension, Braun launched an investigation into the incident during which he interviewed more than ten employees, excluding Myers and Grimsley. (Pl.'s Answer to Local ¶ 14.) Among these witnesses were Dameta Powell, Antonio Arroyo, Linda May, Smyder, Maria Diaz, and Maria Barajas. After each interview, Braun would type up notes and have the witness sign the typed statement. (*Id.* at ¶ 15.)

Each interviewee confirmed the threats Grimsley made against Myers, or otherwise described Grimsley's inappropriate behavior. Powell, who is black, stated that, while Grimsley never made threatening comments about Myers to her, she (Powell) "danced in front of [Grimsley, who held a box knife,] to block her way so she couldn't go anywhere." (Def.'s Mot. Ex. 2 at 130.) Arroyo told Braun that Grimsley had yelled, "I'm going to get that SOB," and ran

after Myers, but Powell thwarted her effort. (Def.'s Mot. Ex. 2 at 132.) Arroyo couldn't

remember seeing any weapon in Grimsley's hand. (*Id.*) May stated that Grimsley was "ranting

and raving," and Grimsley walked fast "toward the main aisle," but she said that, if Grimsley had

anything in her hand, it was a base.[2] (Def.'s Mot. Ex. 2 at 131.) Barajas, too, confirmed the story,

though her account of the events was based on other witnesses' statements. (Def.'s Mot. Ex. 2 at

133.) Diaz further confirmed the story, stating that she saw Grimsley become angry and move in

Myers direction but Powell stopped her. (Def.'s Mot. Ex. 2 at 136.)

After completing these interviews, and based on the statements the witnesses gave, Braun

determined that Grimsley should be terminated. (Pl.'s Answer to Local ¶ 23.) But Braun

apparently felt that Grimsley's years of service entitled her to further consideration; to that end,

he informed her that she could retain her position by signing a "Last Chance Agreement," which

required her to participate in the "Employee Assistance Program." (*Id.* at ¶¶ 24-25.) Smyder

encouraged Grimsley to accepted the agreement, but she rejected it. (*Id.* at ¶ 26.) After she

refused to sign the agreement, Braun fired Grimsley on February 3, 2006. (Smyder Aff. ¶ 6.)


### B.    Post-Firing Events

On February 7, 2006, the Union filed a written grievance on behalf of Grimsley, alleging

termination without just cause. (*Id.* at ¶ 7.) A "third-step" grievance hearing was held on

February 13, 2006, where Braun stated that Grimsley would be reinstated if she acquiesced and

signed a Last Chance Agreement. (*Id.* at ¶ 8.) Subsequently, Braun conducted further

investigations and concluded that Honeywell's previous determination was accurate, but kept its

---

[2] The parties do not specify the meaning of the term "base."

- 5 -

conditional offer of reinstatement on the table until February 24, 2006. (Pl.'s Answer to Local ¶¶ 31-22; Smyder Aff. ¶ 9.)

Grimsley rejected the Last Chance Agreement by letter via her Union representative, Smyder, on February 24, 2006. (Pl.'s Answer to Local ¶ 33.) The Union subsequently accepted the termination, and the grievance did not proceed to arbitration. (*Id.* at ¶ 34.)

On March 24, 2006, a month after refusing the Last Chance Agreement, Grimsley filed a Charge of Discrimination ("Charge") with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC").[3] (Local 134 App. in Supp. of Mot. for Summ. J. ("Local App.") 5(B) at 1.) In this Charge, she alleged three particular acts of discrimination. First, she claimed that Honeywell suspended her on January 27, 2006, because she was black, maintaining that she had met Honeywell's legitimate expectations. (*Id.*) Specifically, she stated that, on January 27, 2006, Myers shouted at her, and Braun called her into his office. (*Id.* at 2.) Braun explained to Grimsley that Myers had claimed that she (Grimsley) had chased him (Myers) with a knife. (*Id.*) Braun then suspended her, and Grimsley claimed that "[Braun] simply took the word of Myers, a white employee, over mine." (*Id.*)

Grimsley's second claim concerned a meeting with Braun on February 3, 2006, at which Braun told Grimsley that the company had concluded its investigation. That investigation uncovered several witnesses who indicated that Grimsley chased Myers and attempted to cut him with a knife; that Grimsley has asked where she could buy a gun; and that Grimsley told other

---

[3] When IDHR receives a charge, it is "dual-filed with the . . . [EEOC] if it is an employment charge based on race, color, religion, sex (including sexual harassment), mental and physical disability, national origin, ancestry and age." Illinois Department of Human Rights, Complaint Process: Intake, *available at* http://www.state.il.us/dhr/charges/Chg_Intake.htm (last accessed Aug. 25, 2009).

employees she was going to run people over with her car. (*Id.*) Grimsley claimed these statement were "blatant lies" and again alleged that "[Braun] took the word of Myers over mine[,] and I was discharged because of my race, black." (*Id.*)

Third, Grimsley claimed that she had been discriminated against based on her age. She claimed that "[t]wo similarly situated younger employees were suspended when they were involved in a physical fight at work."[4] (*Id.* at 3.) On July 6, 2007, the EEOC terminated its proceeding and issued to Grimsley a Notice of Right to Sue. (*Id.*) Grimsley filed suit on August 16, 2007, in the Northern District of Illinois.

## II.    **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court views all facts in the light most favorable to Grimsley and draws all justifiable inferences in her favor. *Anderson*, 477 U.S. at 255. Not all factual disputes will preclude summary judgment; rather, a genuine issue of material fact will exist only where there is evidence such that a jury "could reasonably find for the [nonmoving party]." *Id.*

The parties may not rely on mere allegations or speculation in arguing for or against summary judgment. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). At the

---

[4] Grimsley failed to plead an age discrimination claim in her Third Amended Complaint. (Local App. 5(C).) Therefore, this claim is not currently before the Court.

summary judgment stage, both sides must support their factual assertions with competent evidence of a type otherwise admissible at trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007); *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002) ("The evidence [adduced at summary judgment] need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content.").

The summary judgment standard applies equally to claims involving intent or motive–a court cannot resolve an issue on summary judgment if there exists a genuine issue of material fact as to a party's state of mind. *See Leffel v. Vallye Fin. Servs.*, 113 F.3d 787, 792 (7th Cir. 1997); *Holland v. Jefferson Nat'l Life Ins., Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). But that does not mean the court is unable resolve the claim altogether. *Id.* The primary issue is still whether, viewing the facts in the light most favorable to Grimsley and drawing all justifiable inferences in her favor, a jury could reasonably conclude that Honeywell discriminated against her under Title VII of the Civil Rights Act.

## III. Discussion

### A. Exhaustion of Administrative Remedies

Prior to arguing the merits, Honeywell contends that Grimsley's gender discrimination and harassment claims fail because she did not exhaust her administrative remedies. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") 11-13.) Specifically, it claims that Grimsley's failure to complain about sexual harassment or discrimination, to either the EEOC or Honeywell management, bars her claims. (*Id.*) Defendant offers no argument in response.

To bring a suit in federal court under Title VII of the Civil Rights Act, the plaintiff must first file, within a certain period of time, a charge of discrimination with the EEOC. 42 U.S.C. 2000e-5(e)(1) (stating the time period and filing requirements for charges of discrimination). Although the time period and filing requirements for filing a complaint with the EEOC are not jurisdictional, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392 (1982),[5] the filing itself is a condition precedent the plaintiff must satisfy before bringing a suit in federal court. *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Otherwise, § 2000e-5(e) would have no effect at all. Thus, a plaintiff's failure to file a charge of discrimination prior to initiating a lawsuit in federal court dooms a Title VII claim. *Id.*; *Harper v. Godfrey* Co., 45 F.3d 143, 147-48 (7th Cir. 1995); *see Love v. Pullman Co.*, 404 U.S. 522, 523 (1972) ("A person claiming to be aggrieved by a violation of Title VII of the Civil Rights Act of 1964 may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief.") (citing 42 U.S.C. §§ 2000e–2000e15) (footnote omitted) (citation omitted).

Thus, those charges not filed with the EEOC are waived, and the plaintiff cannot sue on the basis of claims she failed to raise at the administrative level. *Cheek*, 31 F.3d at 500 ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge.") (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). In this case, Grimsley initially filed her complaint with the IDHR, which filed the Charge with the EEOC as a

---

[5] It bears mentioning that, although the Supreme Court stated that "Congress necessarily adopted the view that the provision for filing charges with the EEOC should not be construed to erect a jurisdictional prerequisite to suit in the district court," *Zipes*, 455 U.S. at 397, the Court's holding dealt specifically with the *timeliness* portion of the filing requirement. *Id.* at 398.

matter of course. In this Charge, she alleged three particular acts of discrimination, two based on race and one based on age. Nowhere did Grimsley claim any sexual harassment or gender discrimination. Nor did Grimsley complain about any sexual harassment or gender discrimination to any Honeywell management personnel. Her gender discrimination and sexual harassment claims, therefore, are in no way related--let alone reasonably related--to the Charge she filed with the IDHR and EEOC. *Cheek*, 31 F.3d at 500 ("[A]ll Title VII claims set forth in a complaint are cognizable that are ' 'like or reasonably related to the allegations of the charge and growing out of such allegations.' '") (internal citation omitted). Because Grimsley did not exhaust her administrative remedies when she failed to file a charge of gender discrimination or sexual harassment, those claims are waived.

## B.      Remaining Claim: Discrimination Based on Race

Grimsley alleges that Honeywell discriminated against her based on race when it terminated her employment. The Supreme Court set forth the two methods of proving race discrimination in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973): the direct method and the indirect method. *Hobbs v. City of Chicago*, 573 F.3d 454, 460 (7th Cir. 2009). Under the *McDonnell Douglas* indirect method of proof, the only theory under which Grimsley seeks relief,[6] the plaintiff must prove the following to succeed: "(1) she was a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class were treated

_____

[6] Grimsley admits that the indirect method of proof is the only method that applies. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") 3.)

more favorably." *Id.* Proving a prima facie case creates a presumption of discrimination, which the defendant can rebut by "'produc[ing] a legitimate, noninvidious reason for its actions." *Id.* (quoting *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008)). "If the defendant rebuts the prima facie case, the burden then shifts back to the plaintiff to show that the reasons proffered by the defendant are merely pretextual." *Id.*

Neither party disputes that Grimsley is a member of a protected class (she is black) or that she suffered an adverse employment action (she was fired). The Court therefore examines whether similarly situated employees not in the protected class were treated more favorably than Grimsley, and whether Grimsley was meeting Honeywell's legitimate job expectations.

### 1. Similarly Situated Employees

Grimsley argues that she is similarly situated to Myers because, even though they may have had different pay grades, "[h]e worked in the same plant as Ms. Grimsley, he worked the same shift as Ms. Grimsley, he had the same category of job as Ms. Grimsley[,] . . . and he ultimately had the same boss as Ms. Grimsley." (Pl.'s Mem. 4.) Honeywell's response focuses on the conduct of the parties: it argues that Myers never engaged in the kind of physically abusive and threatening conduct that Grimsley did. (Def.'s Reply 5-8.)

Determining whether employees are similarly situated requires the court to examine the commonalities that exist between the plaintiff and the allegedly similarly situated individual(s), including their job duties; job description(s); supervisor(s); experience, education, and qualifications the employer considered making personnel decisions. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 635 (7th Cir. 2009). Additionally, this inquiry focuses on conduct: to prove the

- 11 -

individual(s) were similarly situated, "the employee must show that the other coworker had a 'comparable set of failings.'" *Burks v. Wisc. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006).

To show that she and Myers were similarly situated, Grimsley cites only her statement that she complained to her co-employees that Myers engaged in workplace violence when he punched her in the stomach. (Pl.'s Mem. 4.) But she apparently failed to depose those individuals, and none of them filed affidavits supporting her allegations. Even if they had, there is no claim that these employees informed Honeywell management of the incident.

She also provides no evidence that she complained about this incident to any managerial employees at Honeywell; in fact, she admits that she did not. Additionally, when Braun questioned *Grimsley* about this event, she denied knowing anything about it. By contrast, Myers, who claimed that he never punched her, *did* report to Honeywell management the workplace violence he faced. Braun investigated this accusation, which numerous witnesses corroborated. Thus, Braun had evidence of only one act of workplace violence—Grimsley's attempt to attack Myers. Therefore, the Court finds Grimsley failed to identify any other similarly situated employees. As a result, her prima facie case fails.

### 2.    Legitimate Expectations and Pretext

Setting that finding aside, however, the Court next turns to whether Grimsley met Honeywell's legitimate job expectations. Grimsley's primary argument is that this incident was used as a pretext for firing her, claiming that this argument coincides with the question of whether she met Honeywell's legitimate expectations. (Pl.'s Mem. 5.) In other words, Grimsley claims that Honeywell "applied its legitimate expectations in a disparate manner," citing *Elkatib*

- 12 -

*v. Dunkin Donuts, Inc.*, 493 F.3d 827 (7th Cir. 2007), for support. (Pl.'s Mem. 6.) Therefore, she

urges this Court to merge its legitimate expectations and pretext inquiries. (*Id.* at 5.)

The Seventh Circuit has, on several occasions, merged the legitimate expectations and

similarly situated prongs of *McDonnell Douglass*, leaving the legitimate expectations inquiry for

consideration in its pretext analysis.[7] *E.g., Elkhatib*, 493 F.3d at 831; *Grayson v. O'Niell*, 308

F.3d 808, 818 (7th Cir. 2002); *Curry v. Menard*, 270 F.3d 473, 477-78 (7th Cir. 2001). In other

words, the prima facie case was "merged" into three elements (protected class, adverse action,

similarly situated), thereby eliminating the legitimate expectations prong. *Elkhatib*, 493 F.3d at

831. For the merger to apply, however, the "'plaintiff [must] produce[] evidence sufficient to

raise an inference that an employer applied its legitimate expectations in a disparate manner.'"

*Elkhatib*, 493 F.3d at 831 (quoting *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir.

2002)).

Grimsley claims that Honeywell applied its policy differently to her than to Myers by

firing her for engaging in workplace violence but not doing the same to Myers. Honeywell,

however, applied its legitimate expectations in the only way it could–based on the knowledge it

had. This knowledge included numerous witness reports obtained in the investigation of the

complaint against Grimsley, nearly all of which indicated Grimsley had attempted to attack

Myers. Honeywell did not have one similar complaint about Myers, either from Grimsley or any

other employee.

---

[7] Contrary to Grimsley's statement of the law, the legitimate expectation inquiry merges
with the similarly situated inquiry–not with the legitimate expectations inquiry. *Elkhatib*, 493
F.3d at 831 (stating that "the second and fourth prongs [of the *McDonnell Douglas* test] merge").

Employers are entitled to make personnel decisions based on evidence, and they cannot

be deemed to have knowledge they do not posses. As a result, it is impossible for an employer to

apply its legitimate expectations disparately to two employees who, to its knowledge, acted

differently. Here, to Honeywell's knowledge, Grimsley attempted an act of violence while Myers

did not. In other words, Myers met Honeywell's job expectations, which were the same for all its

employees, while Grimsley did not. Based on this analysis, the Court finds that Grimsley has

failed to put forth evidence sufficient to draw an inference that the employer applied its

expectations in a disparate manner.

Since there is no *Elkhatib* merger in this case, Grimsley must show that she met

Honeywell's legitimate expectations, which she cannot do. The evidence adduced shows that

Grimsley threatened Myers with physical harm, Braun investigated the incident, the investigation

corroborated the reported incident, and Braun terminated Grimsley based on this corroboration.

Such a dismissal fell within the bailiwick of the Handbook's offenses that result in "immediate

termination" and, therefore, outside the scope of Honeywell's legitimate expectations.

Further, even if Grimsley presented sufficient evidence to cause the second and fourth

prongs to merge, the Court already has found there were no employees outside of the protected

class who were similarly situated to Grimsley. For those reasons, Grimsley's prima facie case

fails.

### C.    Pretext

Finally, Grimsley contends that Honeywell fired her for pretextual reasons, arguing that

the accusations leveled against Grimsley were "factually baseless." (Pl.'s Resp. 8.) Once a prima

facie case is shown, the burden shifts to the defendant to articulate a non-discriminatory reason for firing the employee. *Hobbs*, 2009 WL 2151308, at *3. If the defendant is successful, the burden shifts back to the plaintiff to show the articulated reason was pretextual. *Id.* Assuming *arguendo* that Grimsley proved her prima facie case,[8] the Court finds that Honeywell did not fire Grimsley based on pretext.

The pretext inquiry asks "'whether the employer honestly believes in the reasons it offers,' not whether it made a bad decision." *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145-146 (7th Cir. 1994) (quoting *Kralman v. Ill. Dept. of Veterans' Affairs*, 23 F.3d 150, 153 (7th Cir. 1994)) (granting summary judgment against employee who brought age discrimination action but failed to show decision was more than merely unwise). Honeywell has met its burden by showing, as previously stated, that it fired Grimsley because she made threats against Myers, which were confirmed by witnesses it interviewed during its investigation of the incident. Grimsley, by contrast, has failed to show that this incident was merely a pretext for her firing. If consulting with only a few key people who confirm facts that merit termination is enough to fire an employee, *Rand*, 42 F.3d at 1145, surely Braun's interviews with ten corroborating witnesses is too. *See Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) ("'[The court] [does] not sit as a superpersonnel department' where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices." (quoting *Holmes v. Potter*, 384 F.3d 356, 361-62 (7th Cir. 2004)). As a result, the Court finds Grimsley failed to

---

[8] This assumption, of course, does not mean, for the purposes of analysis, that the Court assumes Grimsley made out her prima facie case based on the reasons she has articulated and the court has rejected.

demonstrate that the incident in which she threatened the life of another employee was merely a pretext for her termination.

## IV. Conclusion

Based on the foregoing analysis, the Court finds that no genuine issues of material fact exist as to Grimsley's race discrimination claim; therefore, the Court grants Honeywell's Motion for Summary Judgment.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** August 25, 2009.